OPINION
BATCHELDER, Circuit Judge.

“How sharper than a serpent’s tooth it is To have a thankless child!”

William Shakespeare, King Lear, act I, sc. 4
Before us on appeal are a husband and wife (“the Creditors”), who have felt the bite of their thankless foster child. With his wife, this foster child (“the Debtors”) borrowed a substantial sum of money from his foster parents, promising to repay the loan within a few months out of anticipated insurance proceeds from a fire loss. Instead of repaying the loan, however, the Debtors filed a petition in bankruptcy under Chapter 7 and failed to include the foster parents in the list of creditors filed with the petition. Their no-asset case was duly administered, the Debtors eventually obtained a discharge pursuant to 11 U.S.C. § 727, and their case was closed. The Creditors, unaware of the bankruptcy proceeding, and having repeatedly importuned the Debtors to repay the loan according to their promise, filed suit in state court and obtained a judgment against the Debtors for the unpaid balance of the loan.
The Debtors moved to reopen their Chapter 7 proceeding in order to list the debt, claiming that their failure to include it initially had been due to forgetfulness and inadvertence. The Creditors objected to the motion to reopen, claiming that in light of their repeated requests for payment and the Debtors’ protests of poverty, the Debtors’ memory lapse was not credible, and that the Debtors had failed to list the debt because they intended to defraud the Creditors. The. Creditors opposed the reopening of the Chapter 7 proceeding because they believed, and still believe, that an unlisted debt is not discharged, and that the Debtors ought not be permitted to now list this debt and obtain its discharge. The parties agree that if this debt had been timely scheduled, it would have been dischargeable under 11 U.S.C. § 523, and that even if the debt had been listed and a proof of claim had been filed, because this was a no-asset case, there would have been no payment on the debt. The Bankruptcy Court denied the Debtors’ motion to reopen, but held that the debt to the Creditors was nonetheless discharged, and the District Court affirmed. The Creditors timely appealed. We now AFFIRM.
“ ‘[I]n appeals from the decision of a district court on appeal from the bankruptcy court, the court of appeals independently reviews the bankruptcy court’s decision, applying the clearly erroneous standard to findings of fact and de novo review to conclusions of law.’ ” In re Chavis, 47 F.3d 818, 821 (6th Cir.1995) (brackets in original) (quoting In re Century Boat Co., 986 F.2d 154, 156 (6th Cir.1993)).
The confusion in the district and circuit courts concerning unlisted Chapter 7 debts in a no-asset case, including the dischargeability of such debts, the effect of an order of discharge on such debts, and the efficacy of reopening a bankruptcy ease to include them, is widespread. This confusion is due, in part, to a line of cases that perpetuates the erroneous view that once his case is closed, the debtor must have his case reopened in order to discharge a pre-petition debt not listed in the bankruptcy petition; once the case is reopened, the debtor amends his schedules to list the debt, and the now-scheduled debt is covered by the discharge. But this is not the law.
In a Chapter 7 no-asset case such as this, “reopening the ease merely to schedule [an omitted] debt is for all practical purposes a useless gesture.” In re Hunter, 116 B.R. 3, 5 (Bankr.D.D.C.1990). See also, In re Peacock, 139 B.R. 421 (Bkrtcy.E.D.Mich.1992); In re Thibodeau, 136 B.R. 7, 10 (Bankr.D.Mass.1992); In re Karamitsos, 88 B.R. 122 (Bankr.S.D.Tex.1988); In re Mendiola, 99 B.R. 864 (Bankr.N.D.Ill.1989); In re Anderson, 72 B.R. 783 (Bankr.D.Minn.1987). Under these circumstances, amending the schedule is pointless because, as we shall explain, this debt is discharged and reopening the case and scheduling the debt cannot affect that fact.
*469 The law in this area is counter-intuitive, and requires a careful fitting together of the relevant sections of the Bankruptcy Code and Rules. Because of the confusion in this area, a review of the' provisions governing dischargeability of debts and the effect of a discharge in a Chapter 7 proceeding is in order. At the risk of appearing simplistic, we can summarize the relevant provisions[1] as follows:
A discharge under 11 U.S.C. § 727 discharges every prepetition debt, without regard to whether a proof of claim has been filed, unless that debt is specifically excepted from discharge under 11 U.S.C. § 523. Section 523(a)(3) contains the only exceptions for unlisted and unscheduled debts. Section 523(a)(3)(B) excepts from discharge those debts originally incurred by means of fraud, false pretenses, or malicious conduct, as enumerated in §§ 523(a)(2), (4), and (6), (hereinafter “fraudulent” or “fraudulently incurred” debts).
Section 523(a)(3)(A) excepts from discharge all other debts-ie., debts other than those fraudulent debts specified in § 523(a)(2), (4), or (6)-which are not listed by the debtor in his petition and schedules in time for the creditor to file a timely proof of claim.
However, even 523(a)(3)(A) does not except an unscheduled debt from discharge if the creditor had notice or actual knowledge of the bankruptcy ease in time for timely filing of a proof of claim.
In a Chapter 7 no-asset ease the court does not set a deadline for the filing of proofs of claim. Rather, the court may notify creditors that there are no assets, that it is not necessary to file claims, and that if sufficient assets become available for payment of a dividend, further notice will be given for filing of claims. See Fed. R. Bankr.P. 2002(e). Therefore, there is no date by which a proof of claim must be filed to be “timely,” and whenever a creditor receives notice or knowledge of the bankruptcy, he may file a proof of claim.
The operation of § 523 is obscured somewhat by its convoluted structure, but most of the twists and turns affecting dischargeability have to do with the fraudulent types of debts enumerated in §§ 523(a)(2), (4), and (6).[2]
The statutory language relevant to.debts not fraudulently incurred reads as follows:
A discharge under section 727 ... does not discharge an individual debtor from any debt ... neither listed nor scheduled ... in time to permit ... timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.
11 U.S.C. § 523(a)(3)(A). Thus, § 523(a)(3)(A) excepts a debt from discharge if the debt was not scheduled in time for a timely filing of the proof of claim, but not if, despite the debt’s not having been scheduled, the creditor nevertheless received notice of the bankruptcy in time to file a timely proof of claim. Put another way, the debt is discharged so long as it is scheduled in time for the creditor to file a proof of claim or the creditor finds out about the bankruptcy case in time to do so. Scheduling the debt enables the bankruptcy court to provide the creditor with notice. Where the creditor, through some other means, finds out about the bankruptcy in time to assert his right to a portion of the proceeds of the estate, there is no reason to except an otherwise dis-chargeable debt from the effect of the discharge. But where the creditor is not aware of the bankruptcy, he cannot assert his right. Without the exception in § 523(a)(3)(A), the debtor could simply deny his uninformed creditors the opportunity to recover from the bankruptcy estate by omitting their debts from the schedule.
*470 In a Chapter 7 no-asset ease, however, the creditors cannot recover from the estate because there is nothing to recover. For this reason, there is no deadline for filing a timely proof of claim in a no-asset ease. Technically speaking, therefore, no matter when the creditor learns of the bankruptcy, he is able to file a timely claim. Because § 523(a)(3)(A) excepts the unscheduled debt from discharge “unless such creditor had notice or actual knowledge of the case in time for such timely filing,” the moment the creditor receives notice or knowledge of the bankruptcy case, § 523(a)(3)(A) ceases to provide the basis for an exception from discharge. Consequently, the debt is at that point discharged.
The result may seem strange at first blush, but it makes sense when one considers both the type of debt involved and the nature of a no-asset case. Unlike the fraudulent debts covered by §§ 523(a)(2), (4) and (6), the debts excepted from discharge by § 523(a)(3)(A) are not excepted because of their nature, but because an injustice will result if the debt is discharged in a situation where the creditor never had the opportunity to participate in the distribution of the assets of the estate.
Yet, there are no proceeds to be distributed to the creditors in a no-asset case, which renders the notice function served by the scheduling of debts far less important. For precisely this reason, there is no deadline for the filing of proofs of claim in a no-asset case. For the most part, creditors in a no-asset case do not stand to gain by having their debts scheduled, nor do they stand to lose by having their debts omitted from the schedules.[3] Thus, it should come as no surprise that the exception contained in § 523(a)(3)(A)-designed as it is to prevent an ignorant creditor from suffering an unjust loss by having a debt discharged without his knowing it-operates differently in no-asset cases where there is little risk that a creditor will suffer a disadvantage resulting from an unscheduled debt.
Our decision in the case at hand should clear up any confusion resulting from the prior Sixth Circuit decision, In re Rosinski, 759 F.2d 539 (6th Cir.1985), which some have interpreted to support two different, and equally invalid, propositions: (1) that reopening the case to amend the schedule of debts is necessary in order to effectuate the discharge of an unlisted debt; and (2) that the debtor’s intent in failing to list .the debt can somehow affect the nature of the debt and, therefore, the debt’s dischargeability. Ros-inski did not extend so far. The issue in that case was whether a creditor in a Chapter 7 no-asset case could prevent .a debtor from reopening her case in order to amend the schedule of debts because such an amendment would prejudice the creditor. We held that the creditor could not prevent the debtor from doing so, because, in the context of a no-asset case, no'prejudice would result.
The question not addressed by the Rosin-ski Court, and the question that we, answer here today, is whether there is any reason to reopen a Chapter 7 no-asset case in order to amend the schedule of debts; that is, whether amending the schedule of debts has any effect on the dischargeability of an unscheduled debt in a Chapter 7 no-asset case. As we stated above, amending the schedule of debts has no effect on the dischargeability of the debt and is, therefore, unnecessary. Nothing we said in Rosinski contradicts this holding.
For example, the Rosinski Court specifically noted:
Under the Code, only the creditors’ rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their loss mandates exception of a late scheduled debt from discharge.
Rosinski, 759 F.2d at 542. In that sentence, the Rosinski Court captured the essence of the exception contained in § 523(a)(3)(A): late scheduled debts are excepted by § 523(a)(3)(A) because the creditor’s right to assert his claim to a share of the estate’s property is superior to the debtor’s right to receive a discharge. The Rosinski Court *471 pointed out, however, that the rights of an omitted creditor in a no-asset ease do not conflict with the debtor’s right to’ discharge, because, “[tjhough he did not receive any earlier notice, [the creditor] has not lost his opportunity to file a proof of claim sufficient for him to share equally with creditors who were initially scheduled.” Id. Indeed, the Rosinski Court observed of the creditor in that case that his “claim is clearly discharge-able and he retains the right to file a claim for any future assets that might be discovered.” Id.
Thus, the dischargeability of the debt (or, more accurately, whether the debt had been discharged) was not precisely the focus of the court’s attention in Rosinski, although perhaps it should have been. The Rosinski Court held that a no-asset debtor’s being permitted to reopen her case to amend the schedule of debts does not prejudice the omitted creditor, a holding which is unaffected by our decision in this present case. We wish to make it clear, however, that Rosinski is a holding with extremely narrow application, especially in light of our holding today that amending the schedule is unnecessary to answer the question of whether the debt has been discharged.
To say, as the Rosinski Court did, that the creditor may not prevent the debtor from reopening the case to amend the schedule is not to say that it is necessary for the debtor to reopen the case in order to obtain a discharge of the debt. It is important to realize that Rosinski focused exclusively on the propriety of reopening the debtor’s bankruptcy case and not on whether the debt had in fact already been discharged. In doing so, the Rosinski Court attached great importance to the factual question of whether or not the debtor acted fraudulently in failing to list the debt. The opinion’s language is confusing, especially where the court stated:
Under current law, [the Debtor] may be prevented from amending her schedule only if her failure to include the creditor on the original schedule can be shown to have prejudiced him in some way or to have been part of a scheme of fraud or intentional design.
Rosinski, 759 F.2d at 541. Later in the opinion, the court stated that the debtor “must advance some justification for the reopening [of her bankruptcy case] sufficient to show that she did not intentionally or recklessly avoid listing the debt.” Id. at 542.
The Rosinski Court’s emphasis on the subjective mental state of the debtor in failing to list the debt has led some to cite that case for the proposition that a debtor’s actions in failing to list the debt can somehow transmute an otherwise ordinary debt into a fraudulent debt of the type covered in § 523(a)(2), (4) or (6). Rosinski does not stand for such a proposition. A debt is either fraudulent or not depending on the debtor’s actions and intent in incurring the debt in the-first instance. An otherwise innocently incurred debt (say, a loan from one’s foster parents) does not suddenly become a fraudulently incurred debt when the debtor fails to list it. The case at hand serves as an excellent example. The Creditors conceded in the bankruptcy proceedings that the loan at issue here is not a fraudulently incurred debt.[4] When the Creditors lent the money to the Debtors, both parties expected it to be repaid. Before they repaid the loan, however, the Debtors filed for bankruptcy. Even if, as we shall assume for the sake of argument, the Debtors purposely failed to list the debt in an attempt to defraud the Creditors, this action did not (and could not) work some perverse alchemy to change the innocent loan into a fraudulent debt of the type that is- covered by § 523(a)(2), (4) or (6) and therefore excepted from discharge pursuant to § 523(a)(3)(B). If the debt is to be excepted from discharge, it can only be excepted according to § 523(a)(3)(A). If the bankruptcy estate had any assets (i.e., if this were not a no-asset case) and if the Debtors’ failure to list the *472 debt had deprived the Creditors of their ability to timely file a proof of claim, then § 523(a)(3)(A) would, indeed, except the debt from discharge. To the extent that Rosinski has been interpreted to demand a different result, it has been dangerously misinterpreted.
In the case before us, it is undisputed that the debt at issue, had it been timely filed, would not have been included in any category of debts that are excepted from discharge by § 523. It is undisputed that the Debtors’ bankruptcy was a no-asset Chapter 7 case. In order to determine whether the bankruptcy court erred in denying the Debtors’ motion to reopen their Chapter 7 case to amend the schedule of debts and in holding that the debt at issue here was nevertheless discharged, we must answer one question: when an otherwise dis-chargeable debt is omitted from the schedule in a Chapter 7 no-asset case and the debtor receives a discharge, what is the effect of reopening the ease to permit the debtor to schedule the omitted debt?
The answer is “there is no effect.” The reason that the reopening has no effect is clear. A debtor cannot change the nature of the debt by failing to list it in his petition and schedules. Section 523(a)(3)(A) excepts from discharge only those debts as to which a timely proof of claim cannot be filed because the debts were not listed and the creditor had neither notice nor actual knowledge of the bankruptcy in time to file a timely a proof of claim. In a no-asset Chapter 7 case, there is no date by which a proof of claim must be filed in order to be “timely.” Whenever the creditor receives notice or acquires actual knowledge of the bankruptcy, he may file a proof of claim, that claim will be timely, and the fact that the debts were’ not listed becomes' irrelevant.' Section 523(a)(3)(A) simply provides no basis for excepting an unlisted debt from discharge if the creditor has actual knowledge such that he can file a proof of claim. And once the § 727 order of discharge is entered, all of the debtor’s pre-petition debts are either discharged or they are not discharged; nothing the debtor does after the entry of the order of discharge can change the character of those debts.
If the Creditors before us had acquired knowledge of the bankruptcy prior to the entry of the discharge order, the debt would not have been excepted from discharge because the Creditors had actual knowledge in time to file a proof of claim. Their learning of the bankruptcy after the entry of the discharge, order did not transmogrify the debt into one that is excepted from discharge under some provision of the Code other than § 523(a)(3)(A). Whether or not the Debtors reopen their case and amend their schedules to list this debt, there will still be no date by which proofs of claim would have to be filed in order to be timely; because the Creditors have actual knowledge of the bankruptcy, § 523(a)(3)(A) does not except this debt from discharge. Hence, the reopening of the Debtors’ Chapter 7 case to permit the amendment of the schedules can have no effeet whatsoever. The debt in question, listed or not, is discharged.
For these reasons, the order of the bankruptcy court denying the Debtors’ motion to reopen and holding that the debt to the Creditors has been discharged is AFFIRMED.

. Because 11 U.S.C. § 523 excepts from discharge many categories of debts not material to this case, we confine our discussion to debts that are (1) not listed or scheduled and (2) not fraudulently incurred. The parties agree that the debt at issue is such a debt.

. For example, § 523(c)(1) provides that even if the debtor lists them, fraudulently incurred debts of the type specified in § 523(a)(2), (4), and (6) can be determined to be nondischargeable, so long as the creditor makes a timely request for the court to make a determination of nondis-chargeability.

. It is trae that creditors may want to add their names to the matrix in the unlikely event that the case is eventually reopened in order to distribute previously undiscovered assets of the estate, but the vast majority of no-asset cases do not involve such plot twists.

. The Creditors attempt to raise on appeal an issue as to whether the debt was fraudulently incurred. The record reflects the explicit acknowledgment of their counsel that they did not take the position that the debt had been fraudulently incurred, and, in any event, we will not consider issues raised for the first time on appeal. For this reason, we decline to address the Creditors’ claim that they have been denied the opportunity to obtain a determination of whether the debt was dischargeable.